UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE A. FRYE,

    Plaintiff(s),

v.

PHYSICIAN HEALTHCARE NETWORK, P.C.,

    Defendant(s).
    _____/

Case No. 06-13933

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Joyce A. Frye filed this action alleging that Defendant Physician Healthcare Network engaged in unlawful age discrimination when it fired her in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq. ("ADEA"), and the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws Ann. § 37.2201, et. seq. ("ELCRA"). Defendant argues: 1) Plaintiff has not established a prima facie case, 2) Plaintiff's repeated mistakes were a legitimate, non-discriminatory reason for Defendant to terminate Plaintiff, and 3) Plaintiff cannot demonstrate that Defendant's justification was pretextual.

    This matter comes before the Court on Defendant's motion for summary judgment. For the reasons set forth below, Defendant's motion is DENIED.

**I.    Facts**

    Plaintiff was born on April 27, 1942. Defendant hired Plaintiff for the position of medical technician on November 2, 2002.[1] Defendant was a newly formed medical lab,

---

[1] Prior to her employment, Plaintiff was interviewed on behalf of Defendant by Ed Urbanski and Dave McKay.

and Plaintiff was the first technician hired. Plaintiff's duties as a technician included accepting specimens, running tests, sending specimens out for tests, and forwarding test results to doctors. When she began working for Defendant, Plaintiff was 60 years old.

Defendant hired additional medical technicians as its workload increased. Defendant hired Warren Spaulding as a lab technician in December 2003. In September of 2004, Mr. Spaulding was promoted to the position of lab manager. Despite his new position, Mr. Spaulding's work as a technician did not decrease. In late 2004, Defendant hired Shawn Frederick as a part-time lab technician. Mr. Frederick was "twenty-something" when hired. For the remainder of Plaintiff's employment, Defendant employed three technicians: Plaintiff, Mr. Spaulding, and Mr. Frederick. Plaintiff was fired by Candice Robinson, Defendant's Manager of Clinical Services, on November 27, 2005.

Defendant claims that Plaintiff made numerous mistakes during her employment, and that these mistakes were the reasons Plaintiff was fired. From September 2004 until November 2005, these alleged mistakes included: reporting a test without first calibrating the equipment, running the wrong patient's specimen, incorrectly filling out lab slips, placing a urine sample in the wrong area of the lab, reporting a result that had not been quality controlled, misordering an electrolyte panel as a lipid panel, mistyping test results, and sending a lab report to the wrong clinic. Additionally, Defendant claims that on November 23, 2005, Plaintiff incorrectly reported one patient's results as those of another patient. Four days later, Plaintiff was fired.

Plaintiff's alleged mistakes were recorded in her personnel file in two separate documents. Both documents were prepared by Mr. Spaulding. The first document was a list that summarized mistakes from June 6, 2005 to November 23, 2005. Mr. Spaulding

2

does not recall when he prepared the document. The second document was a more detailed entry that described a mistake made on September 14, 2004. Defendant's ordinary practice is to make the employee aware of any notations in her personnel file, and the preferred format is to have the employee acknowledge the notations in writing. Neither document in her personnel file was signed by Plaintiff.

Plaintiff's alleged mistakes were not unique to her. On November 28, 2005, Mr. Frederick, another lab technician, incorrectly reported one patient's results as those of another, the same mistake allegedly made by Plaintiff on November 23, 2005. Mr. Frederick's mistake did not result in his discharge, but instead resulted in a letter being sent to the Manager of Clinical Services, Candice Robinson. Mr. Frederick signed this letter and indicated that he agreed with its contents. In addition, Mr. Frederick was warned that this type of error was "of the most extreme in nature." Mr. Spaulding kept a list of other mistakes made by Mr. Frederick and acknowledged that this list might be similar to the list of Plaintiff's alleged mistakes.

Plaintiff's personnel file also contained annual appraisals. Two appraisals, dated October 25, 2004 and November 9, 2005, were conducted by Mr. Spaulding. In the 2004 appraisal, Mr. Spaulding gave Plaintiff generally high marks and noted that she was "dependable to a fault" and "super dependable and technically proficient." In the 2005 appraisal, dated less than three weeks before Plaintiff was fired, Mr. Spaulding gave Plaintiff even higher marks and noted that she had an "excellent work ethic" and was "extremely dependable." He also noted, however, that she needed to be careful not to repeat mistakes.

After Plaintiff was fired, Mr. Spaulding and Mr. Frederick began to work substantial overtime in order to complete the lab's work. Within six weeks, Mr. Frederick was made a full-time employee. To ease the workload, Defendant hired Sandra Simpson as a laboratory assistant in March 2006. When she was hired, Ms. Simpson was 23 years old. Ms. Simpson's duties included processing specimens, matching specimens with patients, and sending test results to doctors.

Ms. Simpson was replaced by Danelle Soulliere on August 8, 2006. Ms. Soulliere was 28 when she was hired, and works full-time for Defendant. As part of her duties, Ms. Soulliere processes specimens; specifically, she determines insurance coverage, determines whether the lab can perform the requested test, enters orders into the computer system, and completes paperwork for specimens that need to be sent to other labs. She also performs secretarial work. Currently, Defendant employs three full-time lab workers: Mr. Spaulding, Mr. Frederick, and Ms. Soulliere. This matter is now before the Court on Defendant's motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

### A. Age Discrimination under the ADEA and ELCRA

The ADEA provides that an employer cannot discharge or otherwise discriminate against any individual because of her age. 29 U.S.C. § 623(a)(1). The ELCRA similarly prohibits age discrimination in employment. Mich. Comp. Laws Ann. § 37.2202(1)(a). The standards of proof under the ADEA and the ELCRA are materially identical, and both can be analyzed under federal precedents. *Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 800 (6th Cir. 2007). Thus, for purposes of this motion, the analysis under the ADEA and the ELCRA is consolidated.[2]

---

[2] The parties in their briefs draw no distinction between the ADEA and the ELCRA.

5

An employee may establish a claim of age discrimination by offering either direct or circumstantial evidence. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). In this case, Plaintiff offers no direct evidence of discrimination but instead relies solely on circumstantial evidence. Accordingly, the Court must follow the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, a plaintiff must establish a prima facie case of discrimination. *Id.* Once a plaintiff has done so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Id.* If the defendant makes this showing, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's articulated reasons were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

1. **Prima Facie Case**

To establish a prima facie case of age discrimination, a plaintiff must show:

1) She was at least 40 years old at the time of the alleged discrimination;
2) She suffered an adverse employment action;
3) She was qualified for the position; and
4) A comparable non-protected person was treated better, or the plaintiff was replaced by someone outside of the protected class.

*Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007)(citation omitted). For purposes of this motion, Defendant does not contest that Plaintiff has established the first three elements of a prima facie case. Defendant focuses solely on the fourth factor and claims that Plaintiff cannot satisfy either prong. The Court rejects Defendant's arguments and considers each prong in turn.

As to the first prong, a plaintiff must show that she and a non-protected employee were similarly situated in all relevant respects and that the non-protected person was treated better. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)(citation omitted). When, as here, discriminatory disciplinary action results in the plaintiff's termination, relevant factors to be considered include whether the plaintiff and the non-protected individual:1) dealt with the same supervisor, 2) were subject to the same standards, and 3) engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the [Defendant]'s treatment of them for it." *Id.*

Here, viewing the evidence in the light most favorable to Plaintiff, she and Mr. Frederick were similarly situated in all relevant aspects. First, Plaintiff and Mr. Frederick both worked under Mr. Spaulding. Second, both were subject to the same standards. Third, both made numerous mistakes. Defendant argues that Plaintiff and Mr. Frederick are not similarly situated because Plaintiff made eight documented mistakes while Mr. Frederick made only one. However, Plaintiff was fired after she reported one patient's results as those of another patient; Mr. Frederick made the same mistake five days later, yet was made a full-time employee shortly thereafter. Furthermore, Mr. Spaulding kept a list of Mr. Frederick's other mistakes that might be similar to the list of Plaintiff's alleged mistakes. Thus, no mitigating circumstances distinguish Defendant's treatment of Plaintiff and Mr. Frederick. Not only were Plaintiff and Mr. Frederick similarly situated in all relevant respects, but Mr. Frederick is not a member of the protected class (because he is under

7

40), and he was treated better than was Plaintiff. Accordingly, Plaintiff can satisfy the first prong of the fourth factor and make out a prima facie case of age discrimination.

As to the second prong of the fourth factor, a plaintiff must show that she was replaced by someone outside of the protected class. *Stockman*, 480 F.3d at 801. Defendant argues that Plaintiff was not replaced at all because her position has not been filled; instead, Defendant argues that Plaintiffs' position simply was eliminated. Defendant supports this claim by noting that before Plaintiff was fired, the lab operated with three lab technicians; now, in contrast, the lab operates with two lab technicians and one lab assistant. This argument is not convincing.

Viewing the facts in the light most favorable to Plaintiff, Plaintiff's position was not eliminated, but simply was renamed. First, Plaintiff's duties while employed included many now performed by the lab assistant. Second, shortly after Plaintiff was fired, Mr. Frederick was promoted from a part-time to a full-time employee. Third, when Defendant employed three lab technicians, two were full-time employees and one was a part-time employee; now that Defendant employs two lab technicians and one assistant, all three are full time employees. Additionally, all three people who subsequently filled Plaintiff's position were under 30 when hired, which places them outside of the protected class. As a result, Plaintiff can make the required showing under the second prong of the fourth factor.

### 2. Defendant's Legitimate Reason to Fire Plaintiff

Plaintiff can establish a prima facie case of age discrimination, and the burden therefore shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's discharge. *McDonnell Douglas*, 411 U.S. at 802. Defendant has met this burden

by presenting evidence that Plaintiff had become prone to serious mistakes. Poor job performance is a legitimate, nondiscriminatory reason to discharge an employee. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001). Defendant alleges not only that Plaintiff made numerous mistakes, but also that she was unable to learn from her mistakes to prevent them in the future. Furthermore, Plaintiff allegedly recorded one patient's information as that of another patient, a mistake Defendant described as "of the most extreme nature," as it can lead to medical action being taken on the wrong patient. Thus, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge.

### 3. Pretext

Because Defendant has offered a legitimate reason for firing Plaintiff, the burden shifts back to Plaintiff to show by a preponderance of the evidence that Defendant's explanation was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. To meet this burden, a plaintiff must "show by a preponderance of the evidence either: 1) that the proffered reasons had no basis in fact, 2) that the proffered reasons did not actually motivate his discharge, or 3) that they were insufficient to motivate discharge." *Tuttle*, 474 F.3d at 319 (citation omitted). Although Plaintiff cannot satisfy the first or second factors, she can satisfy the third factor. Accordingly, Plaintiff can establish that Defendant's proffered explanation was a pretext to mask discrimination.

Under the third factor, a plaintiff must establish that another employee, particularly one not in the protected class, was "not fired even though [he] engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Gray*

*v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 600 (6th Cir. 2001). As discussed above regarding the fourth factor of a prima facie case, Plaintiff has offered sufficient evidence that Mr. Frederick, who is not in the protected class, was not fired even though he made the same mistakes as Plaintiff. For a plaintiff who makes a showing of pretext under the third factor, evidence used to establish a prima facie case is "material to the determination of whether she has demonstrated that the employer's articulated reason for the discharge is not credible." *Id.* (citation omitted). Accordingly, Plaintiff can establish that Defendant's articulated reasons were merely a pretext to mask discrimination.

**B. Same Actor Inference**

Defendant asserts that the "same actor inference" applies to this case. This doctrine allows an inference of a lack of discrimination when the same individual both hired and fired an employee. *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). The inference does not apply to this case because Plaintiff was not hired and fired by the same individual. Defendant contends that Plaintiff was hired and fired by Doug Dolph, but provides no evidence to support this claim. Plaintiff appears to have been hired by Ed Urbanski and Dave McKay, who interviewed Plaintiff before she began working for Defendant. Mr. Dolph was at best tangentially involved in Plaintiff's hiring. As to Plaintiff's discharge, she was fired by Candice Robinson. Because Plaintiff was not hired and fired by the same individual, the same actor inference does not apply.

## IV. Conclusion

For the above-stated reasons, Defendant's motion for summary judgment is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: October 24, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 24, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager